UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YUL DUPREE,

          Petitioner,

                                CASE NO. 2:16-CV-12821
v.                              HON. GEORGE CARAM STEEH
                                UNITED STATES DISTRICT JUDGE

LORI GIDLEY,

          Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Yul Lynn Dupree, ("petitioner"), confined at the Central Michigan Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree home invasion, M.C.L. § 750.110a(2). For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

## I. Background

      Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas

review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d

410, 413 (6th Cir. 2009):

> [Steve] Bruggeman testified that while he was on the front porch of his home smoking a cigarette, he saw an individual crouched between [Elizabeth] Palen's vehicle and the garage of 2144 Manchester Boulevard in the city of Harper Woods. Bruggeman's home was directly across the street from Palen's and one house to the left. The individual broke into the garage, exited with a lawn mower, and walked down the street with it. Although he was not wearing his glasses and could not give full facial details of the perpetrator, Bruggeman identified the individual as a person wearing a blue, red, and white basketball jersey. Bruggeman informed Palen of the suspected break-in and reported it to the police. Palen noticed the garage door was open about eight inches. The garage door and the side door were closed before Palen entered her home 40 minutes earlier. Sergeant Hammerle responded to the report and observed defendant, wearing a blue basketball jersey, pushing a lawn mower down the street. Defendant was one standard city block away from Palen's home at this time. The lawn mower that defendant had matched the description Palen gave of hers, and she later confirmed it was her mower.

*People v. Dupree*, No. 308411, 2013 WL 1689279, at *2 (Mich. Ct. App. Apr. 18, 2013).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 495 Mich.

854, 836 N.W.2d 158 (2013). Petitioner filed a post-conviction motion for

relief from judgment, which was denied. *People v. Dupree,* No. 11-008861-

01-FC (Wayne Cty.Cir.Ct. November 13, 2014). The Michigan appellate

courts denied petitioner leave to appeal. *People v. Dupree,* No. 308411

(Mich. Ct. App. Apr. 18, 2013); *lv. den.* 495 Mich. 854, 836 N.W.2d 158

(2013).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.    Defendant Dupree had decided not to testify even before the trial began. Trial counsel was ineffective in promising he would testify in opening statement, then later breaking this promise at trial.

II.    Mr. Dupree was constructively denied counsel by the spot/late appointment of trial counsel at the time of the preliminary examination. US Const Ams VI & XIV.

III.    There was insufficient evidence at trial to convict Dupree of home invasion and his conviction is in violation of his US Const, Ams V, XIV; Mich Const 1963, Art 1, § 17 rights.

IV.    Mr. Dupree was deprived of a fair trial when the prosecutor mischaracterized the evidence to support its arguments and vouched for the star witness' credibility and trial counsel was ineffective in failing to object. US Const Ams VI, XIV.

V.    Mr. Dupree's constitutional right was violated when trial court did not determine whether Mr. Dupree was competent at the time of sentence. US Const Am XIV.

VI.    Mr. Dupree was denied the right to meaningful allocution due to lack of competency. US Const Am XIV.

VII.    Mr. Dupree was denied his US Const Ams VI, XIV and Mich Const 1963, Art 1, §§ 17, 20 rights to the effective assistance of trial counsel in:
        a. failing to excuse a potentially bias juror, and;
        b. failing to allow defendant to assist with his own defense;

c. failing to move for a direct verdict;
d. failed to investigate an insanity defense and ensure Mr. Dupree was competent at the time of trial and sentencing.

VIII. Mr. Dupree was denied the effective assistance of appellate counsel where counsel neglected strong and critical issues which must be seen as significant and obvious compared to the single issue that was raised. US Const Ams VI & XIV.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the

Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be

reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. Discussion

### A. The procedural default issue.

Respondent contends that petitioner's second through seventh claims are procedurally defaulted because petitioner raised them only for the first time in his post-conviction motion for relief from judgment and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for not raising these claims on direct appeal. Petitioner argues that any default should be excused because of appellate counsel's failure to raise these claims on petitioner's appeal of right.

Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). Additionally, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In the present case, this Court

believes that application of a procedural bar would not affect the outcome of this case, and the Court deems it more efficient in this case to proceed directly to the merits.[1]

## B.  Claims ## 1, and 7.  The ineffective assistance of trial counsel claims.

The Court consolidates petitioner's first and seventh claims together for judicial economy.  In his first claim, petitioner alleges that his trial counsel was ineffective by promising that he would testify in opening statement and then later breaking this promise at trial.  In his seventh claim, petitioner alleges that trial counsel was ineffective by 1) failing to excuse a potentially biased juror, 2) failing to allow petitioner to assist in his own defense, 3) failing to move for a directed verdict, and 4) failing to investigate an insanity defense and ensure petitioner was competent at the time of trial and sentencing.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.

---

[1] Petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim that he raises in his eighth claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).  Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).  If petitioner could show that he received ineffective assistance of appellate counsel that rose to the level of a Sixth Amendment violation, it would excuse his procedural default for failing to raise his claims on his direct appeal in the state courts. *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been

different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Thus, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101.

"Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788

(quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

Petitioner alleges in his first claim that trial counsel promised in

opening statement that petitioner would testify at trial.

Trial counsel stated in opening argument that the defense would

show that petitioner believed the lawn mower was abandoned. Although

petitioner argues this comment implies that he would testify, the Michigan

Court of Appeals found that trial counsel "did not expressly promise that

defendant would testify" and could prove this point "indirectly." *Dupree*,

2013 WL 1689279, at *2. The Michigan Court of Appeals further noted

that:

> In this case, defense counsel's performance was not deficient
> because defendant cannot overcome the strong presumption that
> counsel's assistance was sound trial strategy. Defense counsel
> cross-examined Elizabeth Palen, Steve Bruggeman, and
> Sergeant Jason Hammerle. In his opening statement and closing
> argument, defense counsel argued the description Bruggeman
> gave to the police was inconsistent with defendant's appearance.
> Bruggeman was far away from Palen's home and was not wearing
> his glasses. In closing argument, defense counsel argued that the
> individual who allegedly broke into Palen's garage and stole her
> lawn mower could not have been defendant because Sergeant
> Hammerle testified that someone who was running away from
> Palen's home would have traversed the block in a much shorter
> time than two or three minutes. In addition, defense counsel
> argued that defendant did not give a reasonable explanation of his
> presence to Sergeant Hammerle because they did not inform

defendant of why he was in custody. According to defense counsel, the individual who purportedly stole the lawn mower probably saw Sergeant Hammerle's vehicle and abandoned the lawn mower. Defendant saw and took the abandoned lawn mower. During closing argument, defense counsel pointed out to the jury that defendant did not have to testify.

Defense counsel did not expressly promise that defendant would testify. By stating that the defense would show defendant thought the lawn mower was abandoned, defendant argues defense counsel implicitly promised defendant would testify. But matters may be proved indirectly. Moreover, defense counsel is permitted changes his strategy as the trial advances so long as the changes do not deprive defendant of a substantial defense. An attorney has a duty to consult with his client about "important decisions" and to keep the defendant informed of important developments in the case. Defense counsel met with defendant before trial and counseled defendant regarding whether he should testify. Defendant agreed at trial that he did not want to testify. This Court will neither substitute its judgment for that of trial counsel in matters of trial strategy nor assess counsel's competence with the benefit of hindsight. On this record, counsel's actions did not deprive defendant of a substantial defense; therefore, defendant failed to establish defense counsel's representation fell below an objective standard of reasonableness.

*People v. Dupree*, 2013 WL 1689279, at *1–2 (internal citations omitted).

The record also reflects that trial counsel argued that the neighbor who saw the perpetrator testified that the man was wearing a Detroit Pistons jersey, based on the colors, and that the jersey was red, white, and blue. At the time of arrest, petitioner's jersey did not have any red or white on it and the jersey was a different color of blue than found on a Piston's

jersey. (T. 12/6/2011, pp. 69, 98).

Furthermore, in closing argument, defense counsel reminded the jury that petitioner did not have to testify.  In accord, the trial court instructed the jury, "Now every defendant has an absolute right not to testify when you decide the case you must not consider the fact he did not testify. It must not affect your verdict in any way." (T. 12/6/2011, p. 122).

Petitioner has not demonstrated that trial counsel denied him of a substantial defense by promising that he would testify at trial.  Additionally, the trial court instructed the jury that they could not consider petitioner's failure to testify.  Jurors are presumed to follow these instructions. *See e.g. Jones v. United States*, 527 U.S. 373, 394 (1999).  Petitioner is not entitled to relief on his first claim.

In his seventh claim, petitioner alleges that trial counsel was ineffective when he failed to excuse a "potentially" biased juror.

Petitioner alleges that Juror # 2 was potentially biased because her home had been broken into twice and she and her family had been involved with the police force for about 20 years. (T. 12/6/2011, p. 37).

When a claim of ineffective assistance of counsel is based on a claim that counsel failed to strike a biased juror, petitioner "must show that the

juror was actually biased against him." *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001), *see also Miller v. Francis*, 269 F.3d 609, 616 (6th Cir. 2001).

Petitioner claims that Juror # 2 was "potentially biased," however, petitioner has failed to demonstrate that the juror was biased against him. The "Courts will not presume bias simply because a juror works in law enforcement, is related to someone working in law enforcement or is acquainted with law enforcement personnel." *United States v. Le Pera*, 443 F.2d 810, 812 (9th Cir. 1971). Petitioner is not entitled to relief on this part of his seventh claim.

Petitioner alleges that trial counsel was ineffective by failing to allow him to assist in his own defense and that trial counsel failed to produce witnesses.

Respondent claims that petitioner's allegations are conclusory. The allegations are conclusory. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).

Petitioner alleges that trial counsel should have requested a directed verdict on the ground that there was insufficient evidence to convict him of

the charges.

As will be discussed when addressing petitioner's sufficiency of evidence claim, *infra,* there was sufficient evidence to convict petitioner of the charges. Defense counsel's failure to move for a directed verdict based on the insufficiency of evidence was not ineffective assistance of counsel, because there was sufficient evidence to support petitioner's conviction. *See Maupin v. Smith*, 785 F.2d 135, 140 (6th Cir. 1986).

Petitioner alleges that trial counsel failed to investigate an insanity defense. Petitioner is not entitled to habeas relief on this claim for several reasons. First, petitioner's claim is without merit because he failed to present any evidence, either to the state courts, or to this Court, that he was legally insane at the time of the crime. *See e.g. Sneed v. Johnson,* 600 F.3d 607, 611 (6th Cir. 2010). More specifically, in light of the fact that petitioner has failed to show that he has an expert who would testify that he was legally insane at the time of the offenses, counsel's failure to raise an insanity defense was not prejudicial to petitioner. *See Abdur'Rahman v. Bell,* 226 F.3d 696, 715 (6th Cir. 2000).

Petitioner also cannot establish that counsel was ineffective for failing to present an insanity defense at trial, in light of the fact that such a mental

state defense would have required counsel to admit that petitioner broke into the garage and stole the lawn mower, which would have been inconsistent with petitioner's claim of innocence at trial. *See Bowling v. Parker,* 344 F.3d 487, 507 (6th Cir. 2003).

Finally, as one court has noted: "[t]here is considerable empirical evidence that insanity pleas in and of themselves are not received favorably by jurors." *Weekley v. Jones*, 76 F.3d 1459, 1463 (8th Cir. 1996)(citing C. Boehnert, Characteristics of Successful and Unsuccessful Insanity Pleas, 13 Law and Human Behavior 31, 34, 36-37 (1989)). Since insanity or mental defenses are rarely successful, it would not have been unreasonable for counsel, at least under the facts of this case, to forego such a defense for a stronger defense theory. *See e.g. Silva v. Woodford,* 279 F.3d 825, 851 (9th Cir. 2002); *see also Sneed,* 600 F.3d at 611 (counsel not ineffective in failing to present insanity defense where "public's widespread skepticism of the insanity defense at the time of Sneed's trial in 1986 (circa the John Hinkley trial), indicate that this was not an attractive defense").

Petitioner finally contends that trial counsel was ineffective for failing to challenge petitioner's competency to stand trial. To support a claim of

ineffective assistance of trial counsel, petitioner must show "that there was a reasonable probability that he was in fact incompetent." *Brown v. McKee,* 460 F. App'x 567, 581 (6th Cir. 2012). Petitioner failed to present any evidence that he was mentally incompetent at the time of trial. Counsel was not ineffective for failing to challenge his competency to stand trial. Petitioner is not entitled to relief on his seventh claim.

### C. Claims # 2. The denial of counsel at the preliminary examination.

Petitioner alleges that he was constructively denied counsel when the trial court judge appointed substitute counsel on the day of the preliminary examination because original counsel, who was appointed on August 27, 2011, failed to meet with petitioner or appear for the preliminary examination. Petitioner contends he was constructively denied counsel because substitute counsel did not have the ability to meet with him or investigate witnesses, evidence, or police reports prior to the hearing.

The Supreme Court has held that in cases where a criminal defendant has been denied counsel at a preliminary hearing, "the test to be applied is whether the denial of counsel ... was harmless error." *Coleman v. Alabama*, 399 U.S. 1, 11 (1970)(citations omitted); *see also Adams v. Illinois,* 405 U.S. 278, 282-83 (1972)("the lack of counsel at a preliminary

hearing involves less danger to 'the integrity of the truth-determining process at trial' than the omission of counsel at the trial itself or on appeal.")(internal quotation omitted). The Sixth Circuit has applied a harmless error analysis on habeas review of claims that a habeas petitioner was denied the right to counsel at a preliminary examination or hearing in a state criminal proceeding. *See Takacs v. Engle*, 768 F.2d 122, 124 (6th Cir.1985); *McKeldin v. Rose*, 631 F.2d 458, 460–61 (6th Cir.1980); *see also Dodge v. Johnson,* 471 F.2d 1249, 1252 (6th Cir. 1973)(record failed to establish that lack of counsel at preliminary examination prejudiced petitioner's rights at trial or in any way tainted finding of guilt).

The record reflects that the neighbor across the street testified that he saw a man break into his neighbor's garage, take the lawn mower, and push it down the street. The police apprehended petitioner with the lawn mower. Because petitioner failed to show that he was actually prejudiced by trial counsel's allegedly inadequate preparation time at the preliminary examination, he is not entitled to relief on his second claim. *See Burgess v. Booker*, 526 F. App'x 416, 432–33 (6th Cir. 2013).

**D. Claim # 3.  The sufficiency of evidence claim.**

Petitioner argues there was insufficient evidence to establish his identity as the person who broke into the garage and stole the lawn mower.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970).  The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted) (emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal

court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.* Furthermore, a habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The Michigan Court of Appeals, referencing the testimony at trial, found:

> [B]ruggeman testified that while he was on the front porch of his home smoking a cigarette, he saw an individual crouched between Palen's vehicle and the garage of 2144 Manchester Boulevard in the city of Harper Woods. Bruggeman's home was directly across the street from Palen's and one house to the left. The individual broke into the garage, exited with a lawn mower,

and walked down the street with it. Although he was not wearing his glasses and could not give full facial details of the perpetrator, Bruggeman identified the individual as a person wearing a blue, red, and white basketball jersey. Bruggeman informed Palen of the suspected break-in and reported it to the police. Palen noticed the garage door was open about eight inches. The garage door and the side door were closed before Palen entered her home 40 minutes earlier. Sergeant Hammerle responded to the report and observed defendant, wearing a blue basketball jersey, pushing a lawn mower down the street. Defendant was one standard city block away from Palen's home at this time. The lawn mower that defendant had matched the description Palen gave of hers, and she later confirmed it was her mower.

*People v. Dupree*, 2013 WL 1689279, at *2.

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).

In the present case, there was strong circumstantial evidence which established petitioner's identity the perpetrator. Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F.3d 987, 992 (6th Cir. 2000)(internal quotations omitted). Identity of a defendant can be inferred through

circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648
(E.D. Mich. 2002).

Although the neighbor testified that he saw a man break into the
garage and push the victim's lawnmower down the street, eyewitness
identification is not necessary to sustain a conviction. *See United States v.
Brown,* 408 F.3d 1049, 1051 (8th Cir. 2005); *Dell v. Straub,* 194 F. Supp.
2d at 648. The neighbor testified that he saw an unidentifiable man
wearing a blue jersey break into the garage and push the lawn mower
down the street. The police apprehended petitioner with the lawn mower a
few streets from where the lawn mower was stolen. The apprehension of
petitioner with the stolen lawn mower was sufficient in and of itself to
establish petitioner's identity as the perpetrator. Under Michigan law,
possession of stolen property within a short time after it is alleged to have
been stolen raises a presumption that the party in possession stole it. *See
People v. Williams,* 368 Mich. 494, 501; 118 N.W.2d 391 (1962); *People v.
Tutha,* 276 Mich. 387, 395; 267 N.W.2d 867 (1936); *see also People v. Fry,*
17 Mich. App. 229; 169 N.W.2d 168 (1969). The circumstantial evidence
was sufficient for a rational trier of fact to conclude beyond a reasonable
doubt that petitioner broke into the victim's garage and stole her lawn

mower. *See Spalla v. Foltz,* 788 F.2d 400, 402-03 (6th Cir. 1986)(conviction of second-degree murder was supported by sufficient circumstantial evidence, including witnesses' description of getaway car, other witnesses' testimony placing defendant in car with same general description and location of cornfield only 15 minutes from victim's house, where defendant and victim had left together).  Moreover, "Pieces of evidence are not to be viewed in a vacuum; rather, they are viewed in relation to the other evidence in the case." *Davis v. Lafler*, 658 F.3d 525, 533 (6th Cir. 2011). Petitioner is not entitled to relief on his sufficiency of the evidence claim.

### E. Claim # 4.  The prosecutorial misconduct claims.

Petitioner claims he was denied a fair trial because the prosecutor committed misconduct by misrepresenting testimony given at trial and by vouching for a witness.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with

unfairness as to make the resulting conviction a denial of due process.'"

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will

thus form the basis for habeas relief only if the conduct was so egregious

as to render the entire trial fundamentally unfair based on the totality of the

circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  In order to

obtain habeas relief on a prosecutorial misconduct claim, a habeas

petitioner must show that the state court's rejection of his prosecutorial

misconduct claim "was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility

for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48

(2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first contends that the prosecutor committed misconduct

during closing argument by mischaracterizing the testimony given by Mr.

Bruggeman, claiming that Bruggeman testified that the perpetrator had on

a blue jersey.  Petitioner cites to the testimony given by Bruggeman as

follows:

> Q.  Were you able to see anything about that individual?
> A.  I just I could identify at the time I mean everything happened
> so quickly I could identify he had a looked to be a Pistons
> jersey on that's the only thing I could see.

Q.  Okay. Were you able to see the color?
A.  I believe it was red white and blue that's why I assumed it was a Pistons jersey.

(T. 12/6/2011, p. 69).

Petitioner alleges that during closing argument, the prosecutor denied him of a fair trial by mischaracterizing Bruggeman's testimony by claiming Bruggeman testified that the perpetrator had on a "blue jersey." (*Id.* at 101-103).

Later in closing argument, the prosecutor requested that the 911 tape be replayed.  On the tape, Mr. Bruggeman reported that he saw a man in a blue jersey break into the victim's garage and take the lawn mower. (T. 12/6/2011, p. 104).  Furthermore, trial counsel had an opportunity to cross-examine Bruggeman's recollection of the clothing worn by the perpetrator. The isolated remarks pertaining to Bruggman's testimony regarding a blue jersey, as opposed to a red, white and blue jersey, was subject to cross-examination, supported by the record, and did not deny petitioner of a fair trial.  Bruggman's 911 call, at the time of the offense, reported that the perpetrator wore a blue jersey.  Because there was factual support in the record for the prosecutor's argument, the prosecutor's remarks did not deprive petitioner of a fair trial. *See U.S. v. Henry*, 545 F.3d 367, 377 (6th

Cir. 2008). This part of petitioner's claim is without merit.

Petitioner next contends that the prosecutor committed misconduct by vouching for its star witness during closing argument as follows:

> So when you judging [sic] credibility thank [sic] about that. Think about whether or not he had an opportunity to lie whether or not you think he did. Because I think all hands point to the fact that he was telling the truth. (citing T.12/6/2011, pp. 113, Ln's 7-10).

In the next line, the prosecutor informed the jury:

> But that's for you to decide ladies and gentlemen you determine the credibility.

*Id.*

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United*

*States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000). Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner is not entitled to habeas relief on his vouching claim because the prosecutor's comment was brief and isolated. An isolated instance of vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See e.g. Joseph v. Coyle,* 469 F.3d 441, 474 (6th Cir. 2006). Secondly, even if this statement amounted to improper vouching, it did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against petitioner made it unlikely that the jury was misled by this brief statement. *See Wilson v. Mitchell,* 250 F.3d 388, 398 (6th Cir. 2001). Lastly, the jury was instructed that the lawyers' statements and arguments were not evidence. This instruction by the court cured any prejudice that

may have arisen from any improper vouching. *Byrd,* 209 F.3d at 537.

The trial court judge instructed the jury that they alone would decide the facts, that they were to do so solely on the basis of the evidence, and that the statements of the attorneys were not evidence. (T.12/6/2011, pp. 116, 118).

Petitioner also claims that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's questions and comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle v. Bagley ,* 457 F.3d 501, 528 (6th Cir. 2006). Petitioner is not entitled to habeas relief on his fourth claim.

**F.  Claims # 5 and 6.  The competency claims.**

The court will combine petitioner's fifth and six claims which pertain to his competency at the time of sentencing.

In his fifth claim, petitioner alleges that he was denied his right to due process when the trial court failed to consider his competency at the time of sentencing.  In his sixth claim, petitioner alleges that he was denied a meaningful allocution due to a lack of competency.

A defendant may not be put to trial unless he or she has a sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996).

The record reflects that there is no indication petitioner did not understand the nature of the proceedings against him or that he could not consult with defense counsel to assist in his case.  Petitioner has thus failed to show that he was incompetent at the time of sentencing. *See e.g. Hill v. Anderson*, 881 F.3d 483, 513 (6th Cir. 2018).

In his sixth claim, petitioner contends that he was denied his right to a meaningful allocution, due to his alleged incompetency.

There is no constitutional right to allocution under the United States Constitution. *Pasquarille v. United States*, 130 F.3d 1220, 1223 (6th Cir. 1997)(citing to *Hill v. United States*, 368 U.S. 424, 428 (1962)). Therefore, a trial court's failure to afford a defendant the right to allocution raises neither a jurisdictional or constitutional error cognizable on habeas review. *Scrivner v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995); *see also Cooey v. Coyle,* 289 F.3d 882, 912 (6th Cir. 2002)(declining to issue certificate of appealability on denial of allocution claim). Petitioner is not entitled to relief on his sixth claim.

## G.  Claim # 8.  The ineffective assistance of appellate counsel claim.

In his eighth claim, petitioner contends that appellate counsel was ineffective for failing to raise his second through seventh claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This Court has already determined that petitioner's second through seventh claims are

without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in her handling of petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

## IV. Conclusion

The Court will deny the petition for a writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DISMISSED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a Certificate of Appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: April 5, 2018

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
April 5, 2018, by electronic and/or ordinary mail and also on
Yul Dupree #194248, Central Michigan Correctional Facility,
320 N. Hubbard, St. Louis, MI 48880.


s/Barbara Radke
Deputy Clerk